IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JEFFERY NOLAN BENNETT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 2:14cv720-MHT |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Jeffery Nolan Bennett ("Bennett") is before the court on a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Doc. No. 1-1.[1]

**I.   INTRODUCTION**

On July 6, 2012, Bennett pled guilty pursuant to a plea agreement to conspiracy to possess with intent to distribute 280 grams or more of crack cocaine and a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846.  Under the plea agreement, the Government agreed to move for a downward departure of at least one level pursuant to U.S.S.G. § 5K1.1 for Bennett's substantial assistance.  After the Government moved for a three-level § 5K1.1 reduction and, prior to sentencing, Bennett filed a motion to withdraw his guilty plea.  He claimed that the Government had represented that its § 5K1.1 motion would result in a sentence of well below 15 years' imprisonment, but its motion for a three-level reduction was insufficient to reach such a sentence. Alleging that he relied on the Government's representation in pleading guilty, he argued that his guilty plea was not knowing and voluntary. At the hearing on his motion, conducted on October

---

[1] References to document numbers ("Doc. No.") are to those assigned by the Clerk of Court in this action.  Page references are to those assigned by CM/ECF.

23, 2012, Bennett also argued that his counsel had assured him he would receive a sentence of well below 15 years. However, Bennett later stated at the hearing that he was not told he would receive a sentence below 15 years, but was told that the Government would recommend such a sentence. The district court denied Bennett's motion to withdraw his guilty plea, finding that no such promise was made. The district court then conducted a sentencing hearing, after which it sentenced Bennett to 188 months' (about 15.6 years) imprisonment.

Bennett appealed, arguing that the district court should have allowed him to withdraw his guilty plea because (1) he did not enjoy "close assistance of counsel" because his counsel was ineffective; (2) he did not understand the consequences of his guilty plea because of his limited mental capacity and paranoia; and (3) the Government and his counsel promised him a sentence below 15 years. *See* Doc. No. 30-27 at 23-34.

On May 1, 2013, by unpublished opinion, the Eleventh Circuit affirmed Bennett's conviction and sentence. *United States v. Bennett*, 518 Fed. App'x 660 (11th Cir. 2013). In affirming, the appellate court stated it would not entertain Bennett's claim of ineffective of assistance of counsel because the record was insufficient to determine whether counsel was ineffective. *Id*. at 662. The appellate court held that because Bennett failed to demonstrate that he did not understand the consequences of his guilty plea or that his paranoia affected his ability to understand his plea, the district court committed no error when it found Bennett was competent to enter his guilty plea. *Id*. at 663. As for Bennett's claim that he should have been allowed to withdraw his guilty plea because the Government and his counsel promised him he would receive a sentence below 15 years, the appellate court found this claim was "belied by the record." *Id*. The Court noted that "the plea agreement made no such promise" and that Bennett himself had acknowledged at the hearing on his motion to withdraw his guilty plea that "he understood that the

government 'was going to make a recommendation' for him to receive a sentence below 15 years – not that he was actually going to receive such a sentence." *Id*.

The Eleventh Circuit's mandate issued on June 4, 2013. Bennett did not petition the Supreme Court for certiorari review.

On July 30, 2014, Bennett, through counsel, filed this motion for relief under 28 U.S.C. § 2255. In his motion, Bennett claims:

1. Trial counsel rendered ineffective assistance during plea negotiations by failing to advise him accurately about the sentence he could receive upon pleading guilty and giving him inaccurate assurances about the sentence he would receive.

2. Trial counsel rendered ineffective assistance at sentencing by making an ineffective objection to the career offender enhancement.

Doc. No. 1-1 at 2; Doc. No. 1-4 at 8-20.

Based on the court's consideration of the parties' submissions, the record, and the applicable law, the court concludes that an evidentiary hearing is not required and that, under Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, Bennett's § 2255 motion should be denied.

## II. DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n. 5 (11th Cir. 1999).

"Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B. Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient

4

representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. *Counsel's Failure to Provide Accurate Advice Regarding Sentence*

Bennett contends that his trial counsel, Bill Lewis, rendered ineffective assistance of counsel during plea negotiations by failing to give him accurate advice about the sentence he could receive upon pleading guilty. *See* Doc. No. 1-4 at 10-11, 17-20. According to Bennett, Lewis erroneously assumed that the plea agreement required the Government to recommend a substantial enough § 5K1.1 reduction at sentencing for the bottom of Bennett's guidelines range to fall below 180 months. *Id*. at 10-11. He alleges that, based on this erroneous assumption, Lewis assured him that he and the Government "had it all worked out" and that he "would get well under 15 years, like 60 months to 120 months." Doc. No. 28 at 3. According to Bennett, Lewis "tricked [him] into signing that plea [agreement]." *Id*.

In an affidavit addressing Bennett's claim, Lewis states that the plea agreement provided that the Government would move for at least a one-level § 5K1.1 reduction, but was "left open" for a greater reduction based on Bennett's cooperation. Doc. No. 9-1 at 1-2. Lewis avers that he

advised Bennett he would be bound by the terms of the plea agreement and that "there was not [a] guarantee that the Government or the Court would grant Mr. Bennett a [§] 5K reduction other than the one-point reduction indicated in the plea paperwork," and "Mr. Bennett indicated he understood that." *Id*. at 1.  According to Lewis, Bennett "understood and was aware of the fact that the [§] 5K reduction would ultimately be up to the Government and the Court and that a sentence of less than 15 years, though possible, was not a guarantee due to those factors." *Id*. at 2.

During an *in camera* session at the October 23, 2012, hearing on Bennett's motion to withdraw his guilty plea, the district court asked Lewis if Bennett ever mentioned to him that he was expecting a sentence of only five or six years in prison, and Lewis responded, "No, sir.  The level we tried to get down – … we're looking at between [a] ten and twelve-year sentence, is what I was shooting for based on his level of cooperation." Doc. No. 30-21 at 38-39.  Lewis later stated, "Judge, I'm not sure where the five or six years came from. Under fifteen years has been consistently argued since we began." *Id*. at 46.

At the hearing on Bennett's motion to withdraw his guilty plea, Bennett acknowledged that he understood the Government "was going to make a recommendation" for him to receive a sentence below 15 years, not that he was actually going to receive such a sentence. Doc. No. 30-21 at 26-27.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59.  To establish prejudice, then, a petitioner "must show that

there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial." *Id*.  A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial.  *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990); *see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).

The record does not support Bennett's contention that he was improperly induced to plead guilty by erroneous assurances from Lewis regarding his sentence.  The transcript of the change of plea hearing reflects that the magistrate judge correctly advised Bennett of the statutory minimum and maximum sentences (not less than 20 years, not more than life) applicable to Bennett's offense in light of the Government's use of only one of Bennett's prior controlled substance convictions to enhance his sentence under 21 U.S.C. § 851.[2]  Doc. No. 30-15 at 4, 7-8.  The written plea agreement set forth this same information.  Doc. No. 30-14 at 2-3.  The written plea agreement contained no provision indicating a specific sentence to be recommended, while

---

[2] A defendant convicted of violating 21 U.S.C. § 841(a)(1) is subject to a sentence enhancement for prior drug convictions if (1) the government files, before trial or a guilty plea, an information stating in writing the prior conviction, and (2) the district court, after conviction but before sentencing, asks the defendant to admit or deny the prior conviction and informs the defendant that any challenge to a prior conviction is waived if not raised before sentencing.  21 U.S.C. §§ 851(a)-(b).  Section 841(b)(1)(B) provides for an enhancement of a defendant's sentence to a mandatory term of life imprisonment if he committed a violation of § 841(a)(1) "after two or more prior convictions for a felony drug offense[.]" 21 U.S.C. § 841(b)(1)(B). That same section provides for an enhancement of a defendant's sentence to a mandatory minimum term of not less than 20 years (and not more than life) if he committed a violation of § 841(a)(1) after one prior conviction for a felony drug offense.  *Id.*

7

providing that the Government agreed to recommend a sentence no greater than the bottom end of the applicable guideline range and to move for at least a one-level reduction under U.S.S.G. § 5K1.1 for Bennett's substantial assistance. *Id*. at 4. The plea agreement provided no indication of an understanding that the Government would offer anything more. Bennett stated under oath at the change of plea hearing that he and Lewis had reviewed and discussed the plea agreement together and that he understood its terms. Doc. No. 30-15 at 6.

Bennett also affirmed during the change of plea hearing that, other than the terms of the plea agreement, no one had made any promises or assurances to him to get him to plead guilty and that the written plea agreement represented the entirety of any understanding he had with the Government. *Id*. at 6-7. He further affirmed that he and Lewis had discussed how the advisory sentencing guidelines would apply in his case. *Id*. at 9. He acknowledged that he understood his sentence would be determined by a combination of advisory guidelines, possible authorized departures from those guidelines, and other statutory factors. *Id*. 8-9. Finally, the written plea agreement signed by Bennett contained a provision whereby Bennett affirmed that he understood his offense level and criminal history category, as calculated by the probation officer and determined by the court, might differ from any estimate made by his counsel or the Government. Doc. No. 30-14 at 11-12.

An inaccurate prediction about sentencing alone will generally not be sufficient to sustain a claim of ineffective assistance of counsel. *See United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting ineffective assistance of counsel claim where the court warned the defendant during the plea colloquy that he may face a sentence higher than anticipated and informed defendant of statutory minimum and maximum); *Arvanitis*, 902 F.2d at 494-95 (no ineffective assistance where claim based only on inaccurate prediction of sentence). Here, the plea

agreement – which Bennett averred he had discussed with his counsel and understood – mentioned no specific sentence, other than to note the statutory minimum and maximum sentence and the Government's agreement to recommend a sentence at the bottom end of the applicable guideline and a § 5K1.1 reduction of at least a one-level.  The magistrate judge also informed Bennett of these matters at the change of plea hearing.  Bennett was cautioned that the sentence imposed might differ from any estimates by his counsel or the Government, and he acknowledged he understood his sentence would be determined by a combination of the guidelines and statutory factors.  Finally, Bennett also affirmed under oath that, other than the terms of the plea agreement, no one had made any promises or assurances to him to get him to plead guilty and that the written plea agreement represented the entirety of any understanding he had with the Government. Bennett's sworn statements in open court that his guilty plea had not been induced by any promises or assurances outside the plea agreement – and his acknowledgment that he understood his sentence might differ from any estimates made by counsel – undermine his present assertion that his guilty plea was induced by erroneous assurances from Lewis regarding the length of his sentence.  "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).  "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  Bennett fails to overcome that presumption here.  "[A] defendant [who] pleads guilty relying upon his counsel's best professional judgment ... cannot later argue that his plea was due to coercion by counsel." *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) (record did not support defendant's claim that his guilty plea was improperly induced by his attorney's assurances regarding the length of the sentence where, among other things, district court explicitly inquired about coercion and was

9

assured by the defendant that there had been none).  Bennett is not entitled to relief based on this claim.

Even if Bennett could establish that Lewis performed deficiently during plea negotiations, he has not established that he was prejudiced by Lewis's performance, because he has not made an adequate showing that he would have pled not guilty and insisted on going to trial but for Lewis's alleged errors.  *Hill*, 474 U.S. at 59-60.  As the Government notes, at the time of Bennett's guilty plea, the Government had in its possession multiple recordings of Bennett arranging to purchase drugs from his codefendant; could have played for a jury Bennett's recorded, post-*Miranda* confession; and could have offered the testimony of Bennett's codefendants to establish his role in the drug conspiracy. Doc. No. 30 at 32. Thus, had Bennett gone to trial, the Government's evidence would have been overwhelming.  *See United States v. Hunt*, 560 Fed. App'x 2, 3 (D.C. Cir. 2014) ("[T]he overwhelming evidence against Hunt, together with the somewhat favorable terms of the plea deal, suggest that, even if Hunt's counsel performed deficiently, there is no 'reasonable probability' that but for counsels' errors the outcome of the proceeding would have been different."); *United States v. Dyess*, 730 F.3d 354, 362-63 (4th Cir. 2013) (§ 2255 movant alleging he received ineffective assistance of counsel in deciding whether to plead guilty could not establish prejudice where "the Government had overwhelming evidence of [the movant's] guilt – his arrest and prosecution were the result of a long investigation complete with wiretaps, drug buys, and co-conspirator testimony").

Bennett "has not proffered even a hint of any defense, much less a suggestion that he could have succeeded had he gone to trial." *United States v. Farley*, 72 F.3d 158, 165 (D.C. Cir. 1995). Had Bennett gone to trial and been convicted of the charges he the indictment, he would have faced a mandatory life sentence.  The Government initially filed a § 851 notice stating that it

intended to use Bennett's three prior felony drug convictions to trigger the mandatory life sentence under 21 U.S.C. § 841(b)(1)(B). However, under the plea agreement, the Government moved to amend its § 851 notice to include only one of Bennett's prior drug felonies, thereby subjecting Bennett to a 20-year mandatory minimum sentence only. What is more, Bennett ultimately received a sentence below the 20-year mandatory minimum when the Government, as part of the plea agreement, filed a § 5K1.1 motion for a three-level reduction, and the district court ultimately granted a four-level downward departure. Bennett has not demonstrated that in light of the mandatory life sentence he faced and the strength of the Government's case, he would not have accepted a guilty plea and would instead have proceeded to trial but for Lewis's alleged deficiencies during the plea negotiation process. Because he fails to establish prejudice resulting from Lewis's performance, Bennett is not entitled to relief on this claim.

### 2. Counsel's "Ineffective Objection" to Career Offender Enhancement

Bennett claims that Lewis rendered ineffective assistance of counsel by making "a totally ineffective objection" to the career offender enhancement at sentencing. Doc. No. 1-4 at 13-15. Bennett contends that although Lewis challenged application of the career offender enhancement in his case, Lewis failed to argue that Bennett's two prior Alabama convictions for drug distribution arose from cases that were "functionally consolidated," so that the separate convictions in those cases should have been counted as only a single sentence for purposes of the career offender guideline. *Id*. In support of his "functional consolidation" argument, Bennett maintains that his 2005 conviction in Pike County Circuit Court in Case No. CC-2005-067 was for a distribution offense that was part of the same drug sting operation by the Troy Police Department that also resulted in his 2006 conviction in Pike County in Case Nos. CC-2005-468 through -473. *Id*. The PSI and the district court counted Bennett's convictions in the two cases as two

convictions, which were used to qualify Bennett as a career offender. According to Bennett, because his convictions in the two cases resulted from a single drug sting operation, they should have counted as only a single conviction, which would mean he did not have the requisite number of qualifying convictions to be sentenced as a career offender.[3] *Id*.

> Section 4B1.1(a) of the sentencing guidelines provides:
>
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. 4B1.1(a).

Application Note 3 to U.S.S.G § 4B1.2 provides that, in determining whether a defendant's prior convictions should be counted separately, the career offender guideline incorporates U.S.S.G. § 4A1.2, which states, in pertinent part:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

U.S.S.G. § 4A1.2(a)(2); *see* U.S.S.G. § 4B1.2, comment. (n.3).

Here, Bennett was arrested on January 11, 2005, for the cocaine distribution charge that led to his conviction in Case No. CC-2005-067. He was arrested on December 12, 2005, for the

---

[3] At sentencing, Lewis argued, unsuccessfully, that the district court should grant a downward departure from Bennett's offense level under the career offender guideline based on his age and circumstances, *see* U.S.S.G. § 5H1.1, because the prior convictions that qualified Bennett as a career offender occurred "around the same time almost ten years ago" when Bennett was in his late teens. *See* PSI, Doc. No. 31, at 19-20; Doc. No. 30-21 at 53-79.

cocaine distribution charges that led to his conviction in Case Nos.CC-2005-468 through -473.[4] Thus, it appears that Bennett's offenses in the cases were separated by an intervening arrest; therefore, his convictions in the cases were subject to treatment as two separate convictions under § 4A1.2(a)(2) and under the career offender guideline.  Further, it is abundantly clear both that (1) Bennett's conviction in Case No. CC-2005-067 resulted from an offense contained in a charging instrument different from the charging instrument(s) for Case Nos.CC-2005-468 through -473 and (2) Bennett's sentences in the two distribution cases were imposed on different dates: October 25, 2005, in Case No. CC-2005-067; May 12, 2006, in Case Nos.CC-2005-468 through-473. Therefore, Bennett's convictions in the two cases were counted properly as two convictions for purposes of the career offender guideline, and the career offender enhancement was properly applied to him.  Bennett has offered no factual support for his contention that his convictions in Case No. CC-2005-067 and Case Nos.CC-2005-468 through -473 resulted from a single drug sting operation.  Nor, even assuming the convictions resulted from a single drug sting operation, does Bennett present legal support for his theory of "functional consolidation."  He fails to show that Lewis performed deficiently by failing to present this argument at sentencing or that he was prejudiced by Lewis's failure to do so.  Consequently, he is not entitled to relief on this claim of ineffective assistance of counsel.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Bennett be DENIED and this case DISMISSED with prejudice.

It is further

---

[4] Bennett was convicted of six counts of distribution of cocaine in Case Nos.CC-2005-468 through -473.  However, the PSI and the district court counted the six convictions as a single conviction for purposes of the career offender guideline and in calculating Bennett's criminal history.

ORDERED that the parties shall file any objections to this Recommendation or before September 28, 2016. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, on this the 14th day of September, 2016.

/s/ Susan Russ Walker  
Susan Russ Walker  
Chief United States Magistrate Judge